O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DALE S., JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. 5:17-cv-00863-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

Thomas Dale S., Jr. ("Plaintiff") worked for a lumber yard as a loader and truck driver. Administrative Record ("AR") 43. While driving on the job in 2010, another truck rear-ended him, and he has not worked since. AR 52-53.

On June 3, 2013, Plaintiff applied for disability insurance benefits ("DIB") alleging disability commencing June 8, 2010. AR 194-97. On January 21, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert

---

[1] As of November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations performing the duties and functions not reserved to the Commissioner of Social Security."

1

("VE"). AR 38-77.

On February 3, 2016, the ALJ issued a decision denying Plaintiff's DIB application. AR 18-33. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "obstructive sleep apnea; mild to moderate degenerative changes of the lumbar spine; mild to moderate degenerative changes of the cervical spine; hypertension; bilateral carpal tunnel syndrome; and depressive disorder, not otherwise specified." AR 20. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work; Plaintiff could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an eight-hour day; sit for six hours out of an eight-hour day; perform occasional postural activities but could not climb ladders, ropes, or scaffolds; have limited use of bilateral upper extremities; and should not work with dangerous machinery or around dangerous machinery, exposure to vibrations, or at unprotected heights. AR 23. Plaintiff was also limited to simple, routine tasks. Id.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform any past relevant work. AR 31. The ALJ found, however, that Plaintiff could work as a cashier, Dictionary of Occupational Titles ("DOT") 211.462-010; housecleaner, DOT 323.687-014; and electronics worker, DOT 726.687-010. AR 33. The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion.

Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUES PRESENTED

Issue One: Whether the ALJ properly evaluated the medical evidence.

Issue Two: Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.

(Dkt. 26, Joint Stipulation ["JS"] at 4.)

## IV.
## DISCUSSION

A. **ISSUE ONE: Whether the ALJ Properly Evaluated the Medical Evidence.**

Plaintiff challenges the following findings by the ALJ as lacking substantial evidentiary support:

(1) that Plaintiff can perform light work despite his spinal impairments (JS at 5);

(2) that Plaintiff can use his upper extremities "frequently" despite his carpal

tunnel syndrome ("CTS") (JS at 6-7);

(3) that Plaintiff can sit, stand, or walk for six hours without changing position at thirty-minute intervals, i.e., the ALJ should have included a sit/stand option in the RFC (JS at 7); and

(4) that Plaintiff's only mental limitation was to simple, routine tasks, which does not incorporate opinions from physicians that Plaintiff cannot maintain persistence, concentration, and pace sufficiently well to complete a competitive, eight-hour workday (JS at 8-12).

**1. Light Work.**

a. Summary of Relevant Medical Opinions.

Multiple medical sources offered opinions concerning how much weight Plaintiff could lift, as follows:

- State agency reviewing physician Dr. Lizarraras initially found that Plaintiff's physical impairments were non-severe and did not assess any functional restrictions. AR 102.

- On reconsideration, state agency reviewing physician Dr. Yee found that Plaintiff could perform medium work, i.e., lifting up to 50 pounds occasionally and up to 25 pounds frequently. AR 121.

- In October 2011, Dr. Evans, a chiropractor who issued a permanent and stationary report in Plaintiff's workers compensation case, precluded Plaintiff from "constant lifting and carrying greater than 30 pounds." AR 352, 430, 432.

- Dr. Pourteymour, a family practice doctor and Plaintiff's treating physician, opined on January 9, 2013, that Plaintiff could return to work the next day without noting any lifting restrictions. AR 358.

- In February 2014, orthopedic consultative examiner Dr. Hoang concluded that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently. AR 450.

b. The ALJ's Evaluation of the Medical Evidence.

The ALJ found that Plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently. AR 23. This finding is consistent with Plaintiff's testimony that he could "lift 25-30 pounds." AR 246 (July 2013 Function Report); AR 64 (he could "probably" lift "around" 25 pounds, but he does not know). It is more restrictive than any lifting and carrying limitations found by a medical source, as summarized above. Nevertheless, Plaintiff argues that the ALJ erred in assessing the medical evidence because "there is no medical opinion in [the] file supporting or consistent with" the ALJ's RFC finding. (JS at 5.)

The ALJ reviewed the objective medical evidence concerning Plaintiff's spinal impairments (AR 26) and explained his conclusion that the medical sources had overstated Plaintiff's lifting abilities (AR 27-29). The fact that the ALJ weighed all the medical evidence along with other evidence (such as Plaintiff's testimony and reported activities) to formulate a *more* restrictive RFC than any one medical source does not mean that the ALJ's assessment lacks substantial evidentiary support. See Burridge v. Colvin, No. 15-3960, 2016 WL 3411550, at *2 (C.D. Cal. June 17, 2016) ("The fact that no single medical opinion recommended the ALJ's ultimate RFC finding is not fatal. The RFC must 'be based on all of the relevant evidence in the case record' and contain 'a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" (citation omitted)).

**2. Frequent Handling/Fingering.**

The ALJ discussed the evidence concerning Plaintiff's CTS, as follows:

[A]n electrodiagnostic report from February 2011 [by Dr. Kafoossi] revealed moderate to severe pathology of median nerves at both nerves, affecting sensory and motor fibers, with the myelin more affected than the axons, the findings of which are consistent with

5

bilateral [CTS] [AR 420]. However, there is minimal evidence in the record aside from the above regarding claimant's complaints, symptoms, or treatment for this impairment.[2] The claimant testified that he had numbness in his right upper extremity and that he underwent surgery on his left upper extremity, but there is no evidence in the record to support this testimony. Thus, the [RFC] determined herein reasonably accounts for the claimant's bilateral [CTS].

AR 27.

The ALJ limited Plaintiff to frequent use of his upper extremities. AR 23. Plaintiff argues that the ALJ failed "to properly explain in his unfavorable decision why he has rejected limitations to occasional use of [Plaintiff's] upper extremities for purposes of gross and fine manipulation …." (JS at 7.) "Occasional" means between "very little" and one-third of the workday, while "frequent" means between one-third and two-thirds of the workday. See Social Security Ruling ("SSR") 83-10.

Plaintiff does not point to any evidence in the record showing that his CTS limits the use of his hands such that he can only use them occasionally. When his girlfriend who lives with him was asked to identify how Plaintiff's condition affects him, she did not check the box for "using hands." AR 236. Neither did Plaintiff. AR 246. Plaintiff has failed to show that the ALJ's limitation to frequent use of his upper extremities was legal error.

**3. Sit/Stand Option.**

The following medical sources offered opinions concerning how long

---

[2] Plaintiff points out that he underwent an EMG and Nerve Conduction Study on August 26, 2011, but this was Dr. Kafoossi's study of his lower extremities, not his hands or wrists. (JS at 6, citing AR 407-11.)

6

Plaintiff could sit, stand, or walk during a typical, eight-hour workday:

- Again, state agency reviewing physician Dr. Lizarraras initially found that Plaintiff's physical impairments were non-severe and did not assess any functional restrictions. AR 102.
- On reconsideration, state agency reviewing physician Dr. Yee found that Plaintiff could sit and stand/walk for "about" six hours "with normal breaks." AR 121. "Normal breaks" means a break in the morning, lunch, and a break in the afternoon. Learnaham v. Astrue, 2010 U.S. Dist. LEXIS 93121, at *19 (E.D. Cal. Sep. 1, 2010) (citing Soc. Sec. Admin., Program Operations Manual System § DI 24510.005(C)(2) ("Consider an 8-hour workday and a 5-day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions") (emphasis omitted)).
- Dr. Evans approved Plaintiff to return to his prior work with restrictions only against "heavy lifting and repeated bending [or] stooping." AR 430.
- On January 9, 2013, Dr. Pourteymour opined that Plaintiff could return to work the next day without listing any sit/stand option restrictions. AR 358.
- In February 2014, orthopedic consultative examiner Dr. Hoang concluded that Plaintiff could sit, stand, or walk six hours in an eight-hour workday. AR 450.

In contrast to these medical sources, Plaintiff testified that if he were offered a job working at a table, he could not do it fulltime because he would "have to stand up every once in a while and sit … and lay down … or recline." AR 61. When asked how long he can sit at a time, he testified, "I don't know. Half hour, maybe 45 minutes. But I do a lot of reclining at the house." AR 63. The VE testified that if a sit/stand option at 30-minute intervals were added to Plaintiff's RFC, then that would preclude all three alternative jobs. AR 70-71.

Ultimately, not a single medical source opined that Plaintiff needed a sit/stand option at 30-minute intervals. The only evidentiary support for a sit/stand option comes from Plaintiff's testimony, which the ALJ gave legally sufficient

reasons for discounting, as discussed in Issue Two.  Again, Plaintiff has failed to show legal error.

### 4. Concentration, Persistence, and Pace.

#### a. Summary of the Medical Evidence.

The following medical sources offered opinions about Plaintiff's mental impairments and their effect on his ability to maintain concentration, persistence, and pace:

• In February 2014, state agency reviewing psychologist Dr. McFarland found Plaintiff moderately limited in maintaining attention and concentration for extended periods, but not significantly limited in (1) maintaining regular attendance, (2) performing activities within a schedule, (3) sustaining an ordinary routine without special supervision, (4) completing a normal workday and workweek, and (5) performing at a consistent pace without an unreasonable number and length of rest periods.  AR 89.  In her explanatory comments, Dr. McFarland stated, "Symptoms may interfere with completion of a normal workday or workweek or may cause inconsistent pace.  He is capable of working when requirements are within MRFC [mental RFC] restrictions."  AR 90.

Dr. McFarland was referring to the MFRC assessed by Dr. Lizarraras for simple, unskilled work.  AR 85-86.  Dr. Lizarraras opined, "Clmt does not appear to have mod limitations in areas such as maintaining consistent attendance, etc., based on recs as a whole.  At most, these appear mild."  AR 85.  Dr. McFarland added a note, "He is capable of work as described in the MRFC."  Id.

• Upon reconsideration in July 2014, state agency reviewing psychologist Dr. Gregg affirmed Dr. McFarland's opinions.  AR 123-24.

• Psychological consultative examiner Dr. Zhang found Plaintiff had some mild and some moderate impairments.  AR 446.  Dr. Zhang found Plaintiff had "mild impairment" in his "ability associated with daily work activity, including attendance" but "moderate impairment" in his "ability to maintain consistent

attendance." Id.

　　　　• Treating psychiatrist at Mountains Community Hospital, Dr. Mazur, completed an MRFC form. AR 483-91. As to nearly all rated work activities, he found Plaintiff "seriously limited" or "unable to meet competitive standards" or having "no useful ability to function." AR 486-89. He opined that Plaintiff was unable to maintain regular attendance or complete a normal workday or workweek without interruptions from psychologically based symptoms. AR 486. He also opined that Plaintiff would miss four or more days of work each month. AR 490.

　　　　• Treating psychologist Dr. Kathy O'Fallon also of Mountains Community Hospital prepared a similar report. AR 474-82. She opined that Plaintiff could satisfactorily maintain regular attendance, but he could not complete a normal workday or workweek without interruptions from psychologically based symptoms. AR 477. She also opined that he would miss four or more days of work each month. AR 481.

　　　　　　　b. The ALJ's Evaluation of the Medical Evidence.

　　The ALJ found that Plaintiff had moderate difficulties maintaining persistence, concentration, and pace. AR 22. Despite these moderate difficulties, the ALJ found that Plaintiff could maintain fulltime employment limited to simple, routine tasks. Id.

　　In reaching this finding, the ALJ gave "great weight" to the assessments of Drs. McFarland and Gregg. AR 29. The ALJ found their opinions consistent with the objective medical evidence and "claimant's generally mild to moderate limitations at the hearing." AR 29.

　　The ALJ gave Dr. Zhang's opinions only "partial weight" citing his lack of opportunity to review Plaintiff's mental health records and lack of support from the record overall. For example, Dr. Zhang opined that Plaintiff is not capable of handling funds. AR 29, citing AR 446. In contrast, both Plaintiff and his girlfriend reported that Plaintiff could use a bank account, pay bills, and handle change. AR

234, 244.

The ALJ gave "very little weight" to the reports prepared by Drs. Mazur and O'Fallon. AR 30. The ALJ found that these reports "grossly overstated" Plaintiff's impairments. Id. The ALJ discredited these reports due the short duration of these treating relationships.[3] Id. The ALJ also found the reports inconsistent with treating records from Mountains Community Hospital. Id. The ALJ noted that both doctors referred to Plaintiff as having Post-Traumatic Stress Disorder ("PTSD") (AR 478, 483) and Dr. Mazur diagnosed him as bipolar (AR 483), but no mental diagnosis other than "depressive disorder" appears in their treating records. AR 30, citing AR 456-71 (hospital visit for dizziness and gastroenteritis; no psychiatric symptoms [AR 458]) and AR 540, 544, 551, 555, 573, 575, 579, 595, 598, 602, 616, 620, 624, 631, 646, 652, 656, 660, 668 (records listing "depressive disorder" as diagnosis).

Plaintiff argues that the ALJ "improperly rejected" the opinions of Drs. Mazur and O'Fallon. (JS at 9.) The JS discusses both doctors' opinions, but it does not discuss the ALJ's stated reasons for rejecting them. (JS 9-11.) As discussed above, the record supports the ALJ's findings that (1) these doctors had very short treating relationships with Plaintiff, (2) their opinions were inconsistent with their own treating records, and (3) their opinions were exaggerated compared to those of other medical sources. These findings provide specific and legitimate reason for discrediting the opinions of Drs. Mazur and O'Fallon. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (where treating or examining physician's opinion is contradicted, ALJ must provide specific and legitimate reasons for discounting it).

Plaintiff also argues that having given "great weight" to Drs. McFarland and

---

[3] Dr. O'Fallon first saw Plaintiff on June 25, 2014, and she wrote her report on July 30, 2014. AR 482. Dr. Mazur indicated that his opinions were valid as of July 8, 2014, and he wrote his report on August 19, 2014. AR 491.

Gregg, the ALJ failed to explain why he "ignored" Dr. McFarland's opinion that Plaintiff's psychological symptoms might "interfere with completion of a normal work day or work week, or may cause inconsistent pace." (JS at 8, citing AR 90.) As summarized above, Dr. McFarland opined that Plaintiff could do work consistent with the assessed MRFC (i.e., limited simple, unskilled work). AR 85-90. In context, the note about Plaintiff's psychological symptoms explained that limitation. Id.

Ultimately, Plaintiff has failed to show that the ALJ erred in weighing the medical evidence and concluding that Plaintiff's mental impairments were not so disabling as to preclude him from doing even simple, routine jobs such as working as a cashier or housecleaner.

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

    **1. Rules Governing the Evaluation of Subjective Symptom Testimony.**

An ALJ's assessment of pain level is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citation omitted); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

Here, the ALJ issued his decision on February 3, 2016. AR 33. At that time, SSR 96-7p had not been superseded by SSR 16-3p (which superseded SSR 96-7p on March 28, 2016). The Court notes that the SSR changes appear immaterial to the ALJ's analysis in this case. Both SSRs note that, in assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Compare SSR 96-7p, 1996 WL 374186, and SSR 16-3p, 2017 WL 5180304.

**2. Summary of Claimed Errors.**

Plaintiff argues, "Essentially, the only reason provided by the [ALJ] for disregarding the entirety of Plaintiff's subjective complaints and testimony under oath was the ALJ's perception that 'the medical record, as highlighted above, casts doubt on the credibility of the claimant's allegations.'" (JS at 19, citing AR 25.) Plaintiff argues that ALJs may not "rely on this reason alone." (JS at 20.)

Defendant points out that while "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (JS at 24, citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).) Defendant also argues that the ALJ cited at least two other reasons for discounting Plaintiff's pain testimony: (1) Plaintiff's receipt of unemployment benefits during the time when he alleged that he was disabled (JS at 25, citing AR 25 and AR 210-11), and (2) Plaintiff's failure to pursue recommended treatment (JS at 24-25).

Plaintiff did not provide "reply" briefing these issues. (JS at 26.)

**1. Analysis of Claimed Errors.**

    a. The Weight of the Medical Evidence.

MRIs in 2010 of Plaintiff's spine showed mild or moderate degenerative changes. AR 382-84. On August 8, 2011, Dr. Rafla, a pain management specialist, observed "straight leg raising tests are severe positive in both the seated and supine positions on both sides." AR 403. In January 2013, Plaintiff was released to return to work with no identified restrictions. AR 358. In February 2014, Dr. Hoang conducted straight leg raising tests that were negative both supine and seated. AR 449.

Plaintiff argues that he cannot do even a limited range of light work and he must lie down throughout the day due to back pain. (JS at 21, citing AR 60-61.) The ALJ assessed an RFC with more exertional restrictions than any of the medical

sources, as discussed in Issue One.  The ALJ did not err in concluding that the medical evidence weighs against fully crediting Plaintiff's pain testimony.

### b. Failure to Pursue Recommended Treatment.

The ALJ noted that Plaintiff had refused treatment or failed to continue with recommended treatment on several occasions. AR 25-27. Plaintiff testified that he refused Cortisone injections because his brothers had found them painful and it did not help them. AR 25, 53-54. Plaintiff also testified that while seeing his mental-health therapist Lisa Talerico was helpful, he had not seen her recently. AR 26, 49. While it was recommended in April 2012 that Plaintiff continue with four more weeks of physical therapy, the record does not demonstrate that Plaintiff continued with physical therapy. AR 27, 684.

It was reasonable for the ALJ to conclude that Plaintiff's impairments were not as disabling as alleged since Plaintiff voluntarily chose not to pursue more aggressive treatment. See 20 C.F.R. § 404.1529(c)(3); Molina, 674 F.3d at 1112 (ALJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment).

### c. Unemployment Benefits.

In Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988), the Ninth Circuit affirmed the ALJ's discrediting the claimant's subjective pain testimony for reasons including "the fact that he left work because he was laid off (although allegedly because of medical reasons) [and] received unemployment insurance benefits thereafter (apparently considering himself capable of work and holding himself out as available for work)."

Citing Copeland, the Ninth Circuit confirmed twenty years later that "receipt of unemployment benefits can undermine claimant's alleged inability to work full-time." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The record in that case, however, did not establish whether the claimant "held himself out as available for full-time or part-time work," and "[o]nly the former is

inconsistent with his disability allegations." Id. The Ninth Circuit found that "the ALJ's credibility finding [based on Carmickle's receipt of unemployment benefits was] not supported by substantial evidence," because there was no evidence of what representations the claimant had made to obtain unemployment benefits. Id. There was evidence that the claimant was attending college full-time, suggesting that he might have certified himself to be available only for part-time work. Id. at 1160. Because the ALJ had cited other reasons supported by substantial evidence, the Ninth Circuit went on to hold that "the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above." Id. at 1163.

In Ghanim v. Colvin, 763 F.3d at 1165, the Ninth Circuit considered an ALJ's decision to discount subjective symptom testimony "because [the claimant] received unemployment benefits after the alleged onset date of his disability." Citing Copeland, the court found that "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." Id. The court, however, pointed out that "Ghanim actually declined unemployment benefits within about a month of his onset date; rather than undercut his claim of disability, this prompt refusal of unemployment benefits supports it." Id.

Effective January 1, 2002 (i.e., between the Ninth Circuit's decisions in Copeland and Carmickle), the California Legislature enacted a statute that makes persons only available for part-time work eligible for unemployment benefits under some limited circumstances:

> An unemployed individual shall not be disqualified for eligibility for unemployment compensation benefits solely on the basis that he or she is only available for part-time work. If an individual restricts his or her availability to part-time work, he or she may be considered to be able to work and available for work pursuant to subdivision (c) of Section 1253 if it is determined that all of following

conditions exist:

 (a) The claim is based on the part-time employment.

 (b) The claimant is actively seeking and is willing to accept work under essentially the same conditions as existed while the wage credits were accrued.

 (c) The claimant imposes no other restrictions and is in a labor market in which a reasonable demand exists for the part-time services he or she offers.

Cal. Unemp. Ins. Code § 1253.8.

Thus, Carmickle did not overrule Copeland. Rather, California law changed between the two decisions, such that what was true when Copeland was decided (i.e., receipt of unemployment benefits *necessarily* meant the claimant had made representations inconsistent with seeking DIB or SSI) was no longer true when Carmickle was decided.

In Burke v. Colvin, 649 F. App'x 495, 496 (9th Cir. 2016), citing Carmickle, the Ninth Circuit held that the "ALJ erred in concluding that Burke's application for and receipt of unemployment benefits undermines her credibility where the record does not establish whether Burke held herself 'out as available for full-time or part-time work.'" The Ninth Circuit indicated that the ALJ had "failed to fulfill his duty to fully and fairly develop the record because the ALJ failed to ask Burke questions regarding her receipt of unemployment benefits …." Id. While the ALJ in Burke had a heightened duty because Burke was unrepresented, the combined lesson of Carmickle and Burke is that where records show a claimant received unemployment compensation, the ALJ must ask the claimant whether he/she claimed availability for part-time or full-time work before relying on receipt of unemployment compensation as an inconsistency that undermines the claimant's subjective symptom testimony.

Here, the ALJ did not ask Plaintiff whether he claimed availability for part-

time or full-time work. That said, claimants bear the burden of proving entitlement to benefits. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965); see also 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you [claimant] have to prove to us that you are blind or disabled... This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"). A represented claimant, upon seeing that the ALJ has relied on receipt of unemployment compensation to discount subjective symptom testimony, should either present to the Appeals Council evidence that he/she only claimed availability for part-time work or else be found to have waived any challenge to the ALJ's finding of inconsistency.

This waiver rule is consistent with the facts that (1) claimants should know what representations they made to obtain unemployment compensation, (2) claimants can easily submit declarations providing that information, and (3) qualifying for unemployment compensation based on availability for only part-time work is atypical. Plaintiff's briefing on appeal did not even mention his receipt of unemployment benefits. Under the facts of this case, the Court finds that Plaintiff waived his challenge to the ALJ's finding of inconsistency based on his receipt of unemployment benefits.[4]

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[4] In the alternative, even if the ALJ did err in considering Plaintiff's receipt of unemployment benefits, the ALJ's other reasons, considered together, provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

# V.

# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: August 22, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge